No. 12,602.

M. L. McNEELY, TUTRIX, VS. J. H. McNEELY, EXECUTOR; SUCCES- SION OF L. McNEELY, DECEASED. OPPOSITION TO ACCOUNT OF EXECUTOR BY M. L. McNEELY, TUTRIX TO MINOR.

| 50 | 823 |
| 52 | 373 |
| 50 | 823 |
| 111 | 441 |

Clerks of the District Courts throughout the State of Louisiana, the parish of Or- leans excepted, are authorized by Act No. 106 of 1880, and Act No. 43 of 1882, in the absence of the District Judge from the parish, or in case of his recusation, to order the execution of wills and to confirm testamentary executors.

Creditors and legatees of a succession accepted under benefit of inventory are at liberty, if the beneficiary heir does not come forward within the legal delay to claim the administration of a succession for himself, to have the succession placed under administration in other hands. C. C., Arts. 1034, 1035, 1036, 1041, 1047, 1058, 1101. The executor appointed by the will of the deceased, though not given seizin, properly takes charge of and administers the succession under such circumstances, assuming that the tutrix of a minor forced heir would have had, on a contest, a preference over him.

The powers, duties and responsibilities of testamentary executors in Louisiana under existing laws, run closely to those of curators and administrators. Parties in interest have the right to exact security at their hands for the faith- ful performance of their duties. C. C., Arts. 1670, 1673; McGehee vs. McGehee, 41 An. 660.

Article 1607 of the Civil Code, which declares that "when at the death of the testa- tor there are heirs to whom a certain proportion of the property is reserved

by law, these heirs are seized of right by his death of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects included in the testament, "whatever be its scope or interpretation was not intended to apply to a case where a succession is accepted under benefit of inventory by a minor heir, and where its property has never been placed in the actual possession of such heir, but has, on the contrary, been legally placed under the administration of, and in the actual possession of a testamentary executor, who by the will was made the universal legatee of the deceased. Bird vs. Jones, 5 An. 543.

When the universal legatee is himself the testamentary executor appointed by the will, and on his petition and prayer the will has been probated and ordered executed, and the executor has qualified and taken possession of the property of the succession, there is no basis for the contention that the fruits and revenues of the thing or things which were "legally" bequeathed to him, belong to the heir, pending the administration.

The application by the person created universal legatee and testamentary executor by last will and testament for an order probating and executing the will, confirming him as executor and placing him in possession under the will as legatee, is a sufficient demand for the delivery of his legacy to cut off the possibility of the fruits and revenues of the things "legally" bequeathed to the universal legatee enuring thereafter to the benefit of the forced heir.

The taking possession during administration by a universal legatee of the property bequeathed to him by the will (the universal legatee being also testamentary executor), does not have the effect, *ipso facto*, of closing the succession and discharging the executor. Succession of Sterry, 38 An. 854; Succession of Francez, 49 An. 1732.

The "*legitime*" is due in Louisiana under a *status* of heirship, though forced heirs are sometimes alluded to as and assimilated to creditors. The forced heir may, by claiming as such, as an heir under benefit of inventory, escape direct personal liability for the debts and charges of the succession, but in fixing the reserve, the law has not ordered it to be established regardless of payment of the succession debts and charges out of the property of the succession, though certain charges are excluded by express provision of law, as for instance, commissions of executorship and costs of delivery. C. C., Arts. 1632, 1687.

Costs and attorney's fees incurred by the executors in defending an action brought by a forced heir to set aside the will in its entirety as a nullity are chargeable against the succession, so also are costs incurred in the general settlement of the succession, also reasonable fees for services of attorneys, necessary for that purpose. Funeral expenses and expenses of last illness, are also chargeable to the succession.

An executor who is also universal legatee, who takes possession *ex parte* of all the property of the succession, and deals with it as his own with knowledge of the existence of a minor forced heir, is chargeable with the rent of the portion of the succession which vested legally in the minor forced heir. Being charged with rent and accorded revenues, the expenses incurred in the cultivation and administration of the plantation, including overseer's wages and ordinary incidental repairing of buildings and clearing of land, are at his cost. The rights and obligations of the parties relative to permanent improvements placed upon the property by the universal legatee, having to be considered from the standpoint of the parties being undivided joint owners of the plantation, these rights and obligations should properly be determined in an action of partition not on opposition to the account.

APPEAL from the Fourth Judicial District Court for the Parish of Grant. *Machen, J.*

*W. C. Roberts* and *R. E. Milling* for Executor, Appellant.

*R. J. Bowman, J. G. White & Thornton* and *J. P. Hadnot* for Opponent, Appellant.

Argued and submitted December 16, 1897.
Opinion handed down January 24, 1898.
Rehearing refused March 7, 1898.

STATEMENT OF THE CASE.

On November 7, 1893, Mary L. McNeely in her capacity as tutrix of her minor child, Ross B. McNeely, filed a petition in the District Court for Grant parish, in which she alleged that the said child was born on the 10th of April, 1890, being the issue of her marriage with Ludlow McNeely; that her husband died on or about the 29th of April, 1893, leaving no other descendants. That on or about the 12th of May, 1893, John H. McNeely petitioned said court to probate and order to be executed a document purporting to be the last will and testament of her said husband by which all of his property was bequeathed to said John H. McNeely. That said will was probated and ordered to be executed and the said John H. McNeely qualified as testamentary executor. That although said will did not give the said John H. McNeely the seizin of the estate of the testator, nor was there any decree giving or decreeing him to have the seizin of said estate, he had taken possession of said estate consisting of a large plantation and improvements thereon yielding a revenue annually of about twenty-five hundred dollars and also of town lots in the town of Colfax and of personal property yielding a further revenue of four or five hundred dollars. That the entire property of her husband and disposed of by the said last will was at his death and was still worth twenty thousand dollars.

That said will was in form a nuncupative will by private act and was an absolute nullity for want of form as prescribed by the Civil

Code for the validity of a nuncupative will by private act. That her husband could not dispose of his entire property to the detriment of said minor, who, even if said last will was valid, was entitled to one-third of said estate, together with *one-third of the rents and revenues from the death of his father* and during the time the said estate was administered by said McNeely as executor.

In view of the premises she prayed that the said J. H. McNeely be cited in his said capacity of executor and as legatee to answer her demand that said will be decreed to be null and void, and that in her said capacity she do recover of the said McNeely, in his capacity of executor and as legatee, the entire property left by Ludlow McNeely at his death, with the revenues since his death. That in the event that the will be maintained as valid that its disposition be reduced to the disposable portion, and that in her said capacity she recover of the said McNeely one-third of the property left by the said Ludlow McNeely, together with *one-third of its rents and revenues since his death.*

On the 4th of June, 1894, defendant appeared in both capacities to except and contingently to answer plaintiff's demand.

By way of exception he contested the right of the plaintiff to bring the action, inasmuch as he denied and contested the fact that the child of whom she claimed to be tutrix was the child of Ludlow McNeely, but the offspring of an adulterous connection between the plaintiff and some person other than her husband; that he was illegitimate and had no rights in, to or upon the property of the estate.

Answering contingently, defendant, after pleading the general issue, admitted that the last will and testament of Ludlow McNeely had been probated and himself appointed executor under it. He averred that the will probated was the last will and testament of the deceased, and that the same was written and executed according to law and was a valid will. That the probate proceedings contained a judgment confirming respondent as testamentary executor and giving him seizin and possession of the estate left by the deceased, and that he had taken possession as universal legatee under said judgment and will. That he had, since the death of Ludlow McNeely and since the probate of the will, caused valuable improvements to be placed on said property, as described in his pleadings; that he had also partially paid a mortgage resting on part of the property bequeathed, and had made repairs and clearings on the property, as

set forth in his answer. He averred that he would be entitled to recover the entire amount of said expenditures and improvements in case the minor recovered the entire property, or one-third thereof should he recover one-third of the property, he being a possessor in good faith under said will and judgment.

He prayed that plaintiff's suit be rejected and dismissed; that the minor child be decreed illegitimate and without right to inherit it from the deceased, and that he as universal legatee be quieted in the ownership and possession of said property bequeathed to him by the will; that it be decreed valid. That in case the plaintiff should recover the entire estate claimed, that defendant have judgment in reconvention for the sum of five thousand seven hundred and sixty-five dollars, or if plaintiff should recover one-third of the estate that defendant have judgment for one-third of said amount with the right of detention of the property until said amounts be paid him.

Motions were made to strike out the exceptions, as the issue therein raised could, if raised at all, be only raised in a direct action and contradictorily with a tutor *ad hoc* to represent the minor. This motion was overruled and a motion to refer the motion to the merits was sustained. The case went to trial and resulted in the District Court in a judgment in favor of the defendant in both of the capacities in which he was sued, decreeing that the minor was neither the child nor heir of Ludlow McNeely and rejecting plaintiff's demand at his costs. The plaintiff appealed to the Supreme Court, which rendered a judgment to be found reported in the 47th An. 1325 (McNeely vs. McNeely).

By that judgment it was decreed that the judgment of the lower court be avoided, annulled and reversed, that Ross B. McNeely was the legitimate child of Ludlow McNeely and his wife, M. L. McNeely, and as such entitled to the *legitime* of one-third of the property left by said deceased; that the will of the deceased in favor of his brother, J. H. McNeely, be reduced to the disposable portion, two-thirds of said property; that all questions of rents and revenues, improvements and debts paid and to be paid be reserved for further proceedings in the lower court, and that defendant pay costs.

Upon the return of the cause to the District Court plaintiff on the 6th of August, 1895, obtained an order from the court that defendant file an account as testamentary executor. In obédience thereto, the

executor presented, first, a provisional account, then a correction as to certain items, and finally, an additional or supplemental account.

To these the tutrix filed several oppositions covering a general opposition to each and all of the items of the account, followed by minutely detailed oppositions as to special items. The court sustained the account to a certain extent, but also partially sustained the oppositions, and homologated the account as so amended. Both parties appealed.

The following admissions were spread upon the record: "That the rent for the entire estate of L. McNeely, deceased, for the years 1894, 1895 and 1896 would be the sum of fifteen hundred dollars a year; that the mortgage claims and taxes paid for said years were not disputed by opponent. That proof would show that the fence erected between the estate of McNeely and the Citizens Bank property being a necessary expense of the estate, was worth two hundred and fifty dollars.

" That the sum of fifteen hundred dollars a year, as stated, was a correct rental for said years above all improvements, except the fence just mentioned, value as stated two hundred and fifty dollars. That the proof would show that the old gin house claimed by opponent to be on the estate of McNeely was removed from said property before the death of McNeely, and, therefore no rent is due on said property.

" That the proof would show that the following items on the account of 1893 are the property of J. H. McNeely: The gin house, two gin stands, one boiler and engine, one steam cotton press and fixtures and one grist mill, and, therefore, no rent is claimed on the gin and its appurtenances by opponent.

" That the proof would show that a proper rental value of the property of the estate for the year 1893 would be the sum of fifteen hundred dollars. This admission is made reserving to the executor all his rights to resist the claim for rent for said year, as set forth in his account, and does not affect the executor's right to claim a charge for other improvements placed on the property during the year 1893, as appears by his account.

" It is understood that the admissions in the record as to what the proof would show with reference to the items made in that connection does not affect the right of the executor to press his claim for court costs, attorney's fees and expenses of last illness, as appears by his account, nor the right of the opponent to oppose them.

" It is further understood that in consequence of the admissions in the record with reference to the gin house and the property that the claim for insurance and taxes on said property is withdrawn.

" It is admitted that the costs in the case of M. J. McNeely, Tutrix, vs. J. H. McNeely, Executor, amounting to $465.65, were paid by the executor."

The opinion of the court was delivered by

NICHOLLS, C. J. The tutrix of the minor, Ross B. McNeely, denies in this court that J. H. McNeely was ever put in possession of the estate of L. McNeely. He avers that " no such judgment was ever rendered; that the clerk probated the will, confirmed the said McNeely as testamentary executor and granted him letters of executorship, and at the same time made the following order: 'That J. H. McNeely be recognized and confirmed as testamentary executor of his brother, Ludlow McNeely, he having taken the oath required by law as such with power to execute said will according to the terms and tenor thereof and that letters testamentary issue to said J. H. McNeely according to law and that he be recognized as testamentary heir and universal legatee of said will, with the right of seizin and possession of the estate according to the terms of said will according to law. That the taking of the oath as executor and the letters of executorship negative the pretence that the said McNeely was put in possession by the *ex parte* and contradictory order of the clerk of court, and that said fact is negatived by his still acting as executor and filing his account as executor. That the clerk was without authority to render any judgment putting a legatee as heir in possession, and no such judgment can be rendered or could have been rendered except by the District Court, in open court, and by suit in the ordinary form of petition and citation, contradictorily with the heir or attorney of absent heirs, and if said *ex parte* order pretends to put the said McNeely in possession it is an absolute nullity on its face, and the said McNeely is not a possessor as owner in good faith, but is in possession as executor (citing C. P. 1001, Secs. 1, 2 and 3; The State vs. Judge of the Court of Probates, 4 Rob. 42; Succession of Lampton, 35 An. 419). That the minor and forced heir was seized of right of all the effects of the succession, and he was entitled to the enjoyment of the fruits and revenues thereof from the date of the death of the testator; that

said fruits and revenues do not belong to the succession, but are the property of the minor. That the forced heir is a creditor of the succession to the extent of his *legitime*, and is in no way responsible for costs and attorney's fees of the suit of McNeely, Tutrix, vs. McNeely, Executor, *et al.*, and those of the succession settlement, they being chargeable to the legatee; that the executor was without authority to cultivate and make crops upon the plantation, or put up improvements, or make repairs thereon for account of the succession; that he did not, in fact, do so, as he cultivated the plantation for his own account, and he alone is chargeable with the expenses of administration—the clearing and repairs upon the place and the improvements put up. That the executor, being also a legatee, was entitled to no commissions as such.

On the 12th of May, 1893, J. H. McNeely filed in the District Court a petition, in which he alleged the death of L. McNeely; that he had left a last will and testament, in which he was constituted universal legatee and appointed testamentary executor; that he had the right to have said will probated and himself put in possession as testamentary executor on qualifying as well as to be recognized as universal legatee and put in possession of the estate. The prayer of this petition was in consonance with its allegations. Annexed to this petition was petitioner's affidavit to the fact of the absence of the District Judge from the parish of Grant.

On the same day the clerk of the District Court probated the will according to its terms and tenor, ordered its execution, and recognized and confirmed petitioner as testamentary executor, and decreed that letters issue to him as such, according to law. It further recognized petitioner as universal legatee, with right of seizin and possession, according to the terms of the said will.

The probate of the will and the order directing its execution has never been contested, though a direct action was brought to annul the will itself, the action being directed against the testamentary executor who had confirmed under the will and its probate and against the same party individually as universal legatee. In this suit the latter was averred to be in possession of the property and fruits and revenues were demanded of him. We do not understand that the claim is made now that the clerk was without authority to probate the will itself and to confirm the executor, but that a proceeding to place heirs in possession is a proceeding which has to be

conducted and disposed of in open court contradictorily with the heirs or an attorney of absent heirs, and that the order for possession can only be signed by the District Judge.

We need not inquire whether, under the laws as they now stand, a clerk of court would be authorized to place the heirs of an intestate succession in possession upon their petition to be so placed, for that is not the case before us. The case at bar is that of an application made for the probate of a will—the granting of an order directing its execution and confirming the appointment of the testamentary executor named therein.

The authority to grant these particular orders is conferred upon clerks of court throughout the State outside of the city of New Orleans by Acts Nos. 106 of 1880 and 43 of 1882. The constitutionality of those acts has not been called in question. We are of the opinion that the will was legally probated and ordered executed and the testamentary executor legally appointed and confirmed.

Being so confirmed we think under the circumstances of this case he was legally authorized to take charge of the property of the succession and liquidate its affairs. The testator was directly authorized by law to appoint a testamentary executor. C. C. 1658, 1659. It is true that in this case he did not grant him the seizin of the estate, but the situation was such as to require that some one take charge of the administration of the estate and its property. Had Ross B. McNeely been of age and had he accepted the succession of his father purely and simply a question might have arisen as to the rights and powers of the testamentary executor appointed by the will. He was, however, not only a minor incapable of accepting the succession otherwise than under benefit of inventory, but no one on his behalf appeared to claim or take charge of the administration of the succession. There was no necessity for parties interested in the succession to call upon the tutrix to declare whether the heir accepted or not, and if he accepted, to declare whether he did so unconditionally or not—the law itself settled that fact. The situation under and through the law was precisely that which would have resulted had creditors or legatees called upon a major heir to declare his status in respect to the succession, and had he declared that he accepted under benefit of inventory. Under such conditions the appointment of a succession representative became at once called for by the law (C. C. 1058), if parties interested should demand one. This representative in the case

of an intestate succession would have been either an administrator or a curator. In the case of a testamentary succession it would have been either the testamentary executor appointed by the will, or an administrator appointed by the court, if the legal heirs under certain conditions should exact that the latter character of representative should be appointed.

We think that the creditors and legatees of a succession accepted under benefit of inventory are at liberty, if the beneficiary heir does not come forward within the legal delays to claim the administration of the succession for himself, to have the succession placed under administration in other hands (C. C., 1034, 1035, 1036, 1041, 1047, 1058, 1095, 1101).

The powers, duties and obligations of testamentary executors in Louisiana, under existing statutes, run closely toward those of curators and administrators. Parties in interest have the right to exact security at their hands for their faithful performance of their duties (C. C. 1670, 1673; Heirs of McGehee vs. McGehee, 41 An. 660).

Holding as we do that J. H. McNeely was legally appointed testamentary executor of the succession of his brother charged under the circumstances of this case with the administration of its property and its affairs we now direct our attention to the consequences of that fact upon the rights of the parties to this litigation.

Counsel of the minor cites Art. 1607 of the Civil Code, which declares that: " When at the death of the testator there are heirs to whom a certain proportion of the property is reserved by law these heirs are seized of right by his death of all the effects of the succession and the universal legatee is bound to demand of them the delivery of the effects included in the testament," as establishing beyond question that it was the duty of J. H. McNeely to have made a demand upon the tutrix for the delivery of the portion left legally to him by the will, and that he not having done so the entire property should be held in law as to have been constantly in the actual possession of the minor up to the present time in so far as a right to fruits and revenues is concerned.

The article in question, whatever may be its scope or interpretation, was clearly not intended to apply to a case where a succession is accepted under benefit of inventory, and where its property has never been placed in the actual possession of such heir, but has, on

the contrary, been legally placed under the administration and in the actual possession of a testamentary executor who is himself the universal legatee of the deceased, and this is the case at bar (Bird vs. Jones, 5 An. 643).

We are of the opinion that when the universal legatee is himself the testamentary executor appointed by the will and on his petition to the court the will has been probated and ordered ex cuted according to its tenor and he has qualified and taken into his actual possession the property of the succession and assumed the liquidation of the estate, there is no basis whatever for the contention that the fruits and revenues of the thing or objects legally bequeathed to the universal legatee belong to the heir.

Even in the special cases to which Art. 1607 may be held to refer the next article provides that, " nevertheless, in those cases the universal legatee will have the enjoyment of the effects included in the testament from the day of the decease if the demand for the delivery has been made within a year from that period; if not, enjoyment will only commence from the day of the judicial demand or from the day on which the delivery has been agreed upon." The law did not contemplate that the universal legatee in the actual possession of the objects bequeathed to him under the will should make a demand for delivery from one not in possession. We think a judicial demand made by the universal legatee for the probate of the will for an order for its execution and the placing of himself in possession under the will is a sufficient demand for delivery of his legacy to cut off the possibility of the fruits and revenues of the thing legally bequeathed to him thereafter enuring to the benefit of the legal heir.

Article 1628 of the Civil Code declares that the testamentary executor who has the seizin of the effects of the succession and who is at the same time a legatee is not bound to demand the delivery of his legacy; that he can retain it in his possession subject to the obligation mentioned in Art. 1627 of being bound to give it up for the purpose of contributing to the payment of debts in case it be liable for any. It is true that Art. 1628 has direct reference to the case of a testamentary executor who is a particular legatee, but we think the provisions of that article fairly extend to the case of a universal legatee situated as is the universal legatee under the circumstances of this case, in their bearing upon the question of the

53

fruits and revenues of the thing legally bequeathed to the universal legatee.

What we have said does not refer to the question of the fruits and revenues of that portion of the thing which the universal legatee may have taken possession of which did not and could not legally belong to him or pass to him under the will, but which remained in and belonged to the heir. That presents a different question. We simply say that the fruits and revenues of that portion of the property of the succession of L. McNeely which was legally bequeathed (the will to the extent of two-thirds having been sustained) to J. H. McNeely, and which went originally into his possession as testamentary executor, belonged to the universal legatee. We think he had the right *quoad* the plaintiff to consider that portion as his own, to so deal with it, subject to such rights on the part of the heir and such liability on the part of the legatee as would result from the ownership of the heir of an undivided interest in that property under the circumstances of this case. We leave out of view in this connection any discussion as to what the situation would be were rights of creditors involved. The question before us is freed from that complication. What those rights and liabilities were in respect to the plaintiff, we will hereafter have to ascertain and declare.

We may say at once that the taking possession by the executor of the property mentioned has not had as its effect the discharge of the executor. He is still executor and his account is properly before us for examination. Succession of Sterry, 38 An. 854; Succession of Frances, 49 An. 1732. The first question with reference to that account which we will take up is that of the costs and attorney's fees in the matter of the suit of McNeeley vs. McNeeley, 47 An. 1321, and those incurred in the general settlement of the estate.

Counsel claim that a forced heir is a " creditor " to the amount of his *legitime* of one-third of the estate as it existed at the date of the death of the testator, and that this amount he is entitled to take as of that date, not reduced by succession costs and charges and attorney's fees.

Counsels claim that the minor's position is that of a creditor is inconsistent with those advanced on his behalf in other portions of their argument. It is true, that forced heirs have sometimes, in some respects, been assimilated to creditors, but it is very clear that that is not their legal *status*.

When a person dies in Louisiana, leaving descendants, they be-come at the instant of his death his heirs. Of this *status* they can not be deprived by their ancestor, unless through legal. disinher-ison for legal cause. In the absence of testamentary dispositions, the law by its own force determines the extent of their respective portions, but it allows the ancestor within limits fixed and an-nounced by itself to modify those proportions, subjecting any modi-fication made by him in excess of this limit to successful reduction by the heir to within those permitted. This power of the ancestor to thus alter by the exercise of his own will the extent of the rights of his descendants in his succession does not result in transforming their *status* from that of heirs to creditors. Of that *status* they can not be deprived by the act of their ancestor. It is by reason of that fact and of their forced legal right to be maintained in their claims as heirs to the portion which as such the law has reserved to them if they elect to claim the same that they are designated as forced heirs. It is only under their *status* as heirs that they can claim this proportion known as the *legitime*. The seizin which they are de-clared in Art. 1607 of the Civil Code to have, is not peculiarly and specially given to them as " forced heirs," but is given to them by law as " heirs " of their father. The seizin is not " granted " to them through that article. It is simply recognized therein in its bear-ings and consequences upon the special condition of affairs to which that article refers. The articles of the Code in describing and fixing the rights and obligations of these forced heirs evidently contemplate cases where the reserve should have been trenched upon either by the donatious *inter vivos* or the testamentary dispositions of the ancestor, and where they are forced to fall back for their protec-tion upon their legal right reserved to them by law, hence it is that they are careful to place themselves before the court exclusively as heirs occupying the position assigned them by law as such. What is that position? It is certainly not that claimed by the tutor of holding the full amount of the proportion allowed them by the law entirely re-gardless of the debts of the deceased and entirely regardless of legal costs and attorney's fees properly and legally chargeable as such to the entire estate for the purpose of its general settlement out of the property belonging to the succession at the date of its opening. The forced heir may, by claiming as such, as an heir under benefit of inventory, escape direct personal liability for the debts and charges

of the succession, but in fixing the reserve, the law has not ordered it to be established regardless of payment of the succession debts and charges out of the property belonging to the succession at its opening, though certain charges are excluded by express provision of law, as, for instance, the commissions of executors as declared in Art. 1687 of the Civil Code and the costs of delivery as declared in Art. 1632.

The question of costs and attorney's fees is complicated in this litigation by the particular manner in which plaintiff brought his suit and that in which it was defended. The action was primarily one to have declared null and void in its entirety the will of Ludlow McNeely, coupled with a demand as resulting from such nullity for the ownership and possession of the entire property with its fruits and revenues from the date of his death, and contingently and subsidiarily for the reduction of the legacy to the disposable portion, with a contingent demand for the ownership and possession of an undivided one-third of the property and one-third of its revenues from the same date.

The defence on the part of the executor was an insistence upon the validity of the will as written, coupled with a denial that the plaintiff was the legitimate child and heir of the deceased. This denial struck at his right either to attack the will as a whole, or to ask for a reduction of the legacy to the disposable portion.

Plaintiff's demand in so far as it attacked the entire will was not in aid of his *legitime* or reserve, but as a general legal heir seeking to be decreed to be the sole heir in the succession. He was cast in the action to the extent that he was proceeding upon that line of attack, and the executor was justified on that same line in the defence he made upon that special issue. Had the suit contained no other issue and claimed no other than that particular relief, plaintiff would unquestionably have had the costs of the suit thrown upon him, and the executor would have been entitled to costs and reasonable attorney's fees (Succession of Hasley, 27 An. 589).

Dalloz and Verge, under Art. 1016, C. N. (our Art. 1634), under the No. 10, refers to a decision, the *syllabus* of which was to the effect that: "L'article 1016 qui porte que les frais de délivrance d'un legs ne peuvent jamais être pris sur la réserve ne met par obstacle a ce que ces frais soient compris dans la condemnation aux dépens contre le réservataire par le jugement qui a repoussé son action en nullité du testament."

We have seen that plaintiff's action contained a contingent demand in which he was successful for a reduction to the disposable portion of the legacy made in the will.

With reference to that portion of the case this court held that the attack upon the legitimacy and heirship of the plaintiff was totally unwarranted by the law. That the child though born after a separation from bed and board was born in wedlock and therefore had had his *status* as a legitimate child and heir irrevocably fixed by the fact that the father had not brought before his death and within the time fixed for such an action, an action "en desaveu" of the child. The executor was aware of the fact that no such action had been brought by the father. He had knowledge of the fact of the existence of the child, and that it had been born during marriage before the bonds of matrimony had been finally broken, and he must be held in law to have known that the special defence he set up was unauthorized and unwarranted.

Had the plaintiff limited his action to a claim for a reduction of the legacy made in the will to the disposable portion, and had he been met with the defence that he was not the child and heir of the deceased, judgment would have been rendered and should have been rendered in his favor for costs. We do not think, under the circumstances of this case, opponent can be made responsible, directly or indirectly, for any portion of the costs incurred, in the attempt to make that defence good, nor for the fees of the attorneys employed for that purpose. The error of law into which the testamentary executor and universal legatee fell as to his right to set up this special defence, and his belief that any estoppel which might have struck the father on this subject did not reach to him, did not have the effect of authorizing the executor to charge up those particular costs and attorney's fees to the succession. He must sustain them himself. The evidence shows that the attorneys in the suit of McNeely, Tutrix, vs. J. H. McNeely, stipulated for a fee of two hundred and fifty dollars for contesting the legitimacy and heirship of opponent. That amount is included in the sum of twelve hundred and fifty dollars, which figures on the account as an item for attorney's fees and should be struck out. The costs incurred in the case of McNeely, tutrix, must be separated; those incurred in attempting to defeat the heirship of opponent should be changed entirely to J. H. McNeely individually; the balance is a proper general charge

against the succession.    The District Court should make the separation and apportionment of these costs.

We are of the opinion that the executor is entitled to charge up, as a charge against the succession, the costs incurred in the general settlement of the succession, as also reasonable fees for services of attorneys rendered necessary for that purpose (C. C. 1682; Succession of Lizzie Dean, 33 An. 869).    Funeral expenses and expenses of last illness are also chargeable to the succession (33 An. 869).    The testamentary executor being also a legatee is not entitled to commissions (C. C. 1689).

The executor is entitled to charge up the amounts paid by him on the mortgage notes held against the property and for the taxes paid by him on the property.

We next consider the claim made by the plaintiffs for fruits and revenues.  His right to the same must be limited to a claim for fruits and revenues upon one undivided third of the property, that being the extent of his interest in the ownership of the property under our decision in the case of McNeely, Tutrix, vs. McNeely, Executor, 47 An. 1325.    He claims that they are due from the date of the death of his father.  We have already stated that J. H. McNeely must be held to have had *knowledge* of the existence of the plaintiff's claim, as the legitimate child of Ludlow McNeely, to one undivided third of his estate, and of the rightfulness of that claim.    The effect of that knowledge was to make him, to the extent of his taking possession of that undivided third, a possessor in bad faith.   He did not, though having this knowledge, make the minor a party in any way to the proceedings for the probating and execution of the will, and the course which he subsequently took in contesting to the bitter end the legitimacy and heirship of the child makes it certain that had plaintiff, through her tutrix, made any demand *upon him at that time* for joint possession of the property, it would have been peremptorily refused by the executor.

It is admitted that the rental of the property is worth *fifteen hundred dollars* per year over and above all improvements for the year 1893, and each succeeding year included in the executor's accounts. The account should be so framed as to charge the executor for the year 1893, and each succeeding year, at that rate as for rent, but these rents should be made to enure one-third to opponent, and two-thirds to the universal legatee.    The right of the opponent as to

rents for years later than the period covered by the accounts should be and is reserved and left open.

The effect of placing J. H. McNeely in the attitude of a *quasi*-tenant, chargeable as for rent, is, while entitling him to the crops, to make him responsible himself for and to relieve opponent from any responsibility for the expenses incurred in the cultivation of and administration of the property as such (including overseer's wages) during the period of his holding the property under those conditions —this does not include permanent improvements upon the property, but does include the ordinary incidental repairing of buildings and clearing of land.

In respect to the permanent improvements placed by J. H. McNeely upon the property it must be borne in mind that when placed there by him he held an interest of two undivided thirds in the property—opponent holding the other undivided third interest. The rights and obligations of parties have to be considered in view of such being the relations between them. We understand the parties to say that they have come to an agreement in respect to the gin house, the two gin stands, the boiler and engine, the steam cotton press and fixtures and the grist mill, which are borne upon the account—that they are recognized by opponent as being the individual property of J. H. McNeely, and that he has the right to remove the same from the property. The District Court should so decree and give effect to this agreement.

We think the rights of J. H. McNeely, as resulting from permanent improvements placed by him on the property other than those covered by the admission referred to should be reserved for consideration and determination in an action of partition between opponent and himself. They are not passed on by us, but are reserved. We think that the amount chargeable to the succession for attorney's fees for the general settlement of the succession up to date, instead of being two thousand dollars as charged in the account, should be reduced to and it is hereby fixed at twelve hundred dollars.

We think we have passed upon all of the disputed items of the accounts now covered by the oppositions. It is possible we may not have done so, as matters have been presented to us, in some respects, in a very unsatisfactory, desultory manner. As some of these items need re-examination for decision, and as over a year has elapsed since the accounts were presented, we think the best course to

pursue will be to reverse the judgment appealed from and to set aside the accounts filed and remand the cause for the filing of a new account under and through which the rights of parties can be finally determined and fixed.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and the accounts filed by the executor are hereby set aside, and it is now ordered, adjudged and decreed that this cause be remanded to the District Court with orders to that court to order the testamentary executor to recast his account and make it conform to the views herein expressed and decided, and to render judgment on the rights and obligations of parties according to the same. Costs of appeal to be paid by the parties in the proportion of one-third and two-thirds, two-thirds by the universal legatees, and one-third by the opponent and heir.