PROVOSTY, J.
The de cujus left a mystic or secret testament. His widow employed the opponent, J. R. Pavy, attorney at law, to cause this will to be probated. On December 21st, Mr. Pavy presented a petition to that ' effect, and filed the will with it, and obtained an order reading:
“Let the sealed envelope herewith filed, purporting to contain the last will and testament of the deceased, be produced in open court at Yille Platte, La., on Monday morning, December 24, 1917, at 10 o’clock a. m., in order that the same may be opened, and that the last will and testament of the deceased may be proved before me on said date.”
[1,2] The petition and the will were filed in the clerk’s office at Yille Platte, the parish seat of the parish of Evangeline; the order was obtained at Opelousas in the parish of St. Landry, where the judge lives. On the morning of the 24th, Mr. Pavy, who lives in St. Landry, repaired to Yille Platte, taking with him five witnesses, at an expense of $25, 'for the purpose of probating the will. On the way he was told by Mr. Lewis, the attorney for two divorced wives of the decedent and their minor children, who were applying for the administration of the succession, that if the superscription of the will bore the date which he, Mr. Pavy, said it did, then the will was null, because since that date a child had been born to one of the divorced wives. Disregarding this information, Mr. Pavy proceeded to have the will opened and proved; but, the judge, because, doubtless, of having been informally' advised of this subsequent birth of a child and of the consequent nullity of the will, forbore to order the execution of the will. Thereafter the subsequent birth of the child having been ascertained to be an incontestable fact, the nullity of the will was recognized, and the proceedings for its probate and execution went no further. The succession was administered upon as intestate, and in due course the administrator filed the final account of his administration. He having refused to put Mr. Pavy thereon as a creditor of the succession for the services rendered by him in the matter of the probate of the will, the latter filed thereto the present opposition, in which he claims a fee of $250. This fee is shown not to be excessive — the estate being valued at over $60,000 — but its being due is contested. In the said services Mr. Pavy is said to have represented the widow of the decedent, and not the succession. The reasons adduced for the contention that he represented the widow, and not the succession, is that it was she who handed the will to him for probating, and that he in other matters in connection with the succes *303 sion represented her. He is not now claiming payment for services rendered in these other matters, hence these other matters and the employment in connection with them are irrelevant to the present matter, which is exclusively that of the presenting of the will for probate and the proving up of the same. The will was in mystic or secret form; its contents were therefore unknown, and hence its probate was no more the concern of the widow than .that of anybody else, except that, being in possession of it (perhaps from having found it among the effects of her deceased husband), it was her right (if not her duty) to present a petition to the judge of probate to have it opened and executed. “Any * * * person who may feel an interest” may do this, says article 928 of the Code of Practice. Not as a matter personal to that person, or in that person’s sole interest, and at that person’s expense, but as a matter pertaining to the succession of the do cujus in the interest of all who may have an interest in the succession, and therefore at the expense of the succession. And for doing this law work the services of a lawyer were necessary. For all expenses, therefore, incurred up to the time that Mr. Pavy was informed by Mr. Lewis of the will having been annulled by the subsequent birth of a child, there can be no doubt that the services were rendered to the succession, and that the succession is liable. The fact that the will proved to be null cannot have the retroactive effect of converting the services thus rendered and expense incurred by Mr. Pavy to and for the succession into services rendered and expenses incurred to and for somebody else. For that part of the services rendered after information received of the subsequent birth of a child the case is not so clear, but, in the light of our jurisprudence, is free from difficulty. In Sterlin’s Ex’r v. Gros, 5 La. 107, where the cause of nullity was a deficiency of attesting witnesses, a cause equally patent with that of the-subsequent birth of a child, if not more so, the succession was made to pay the expenses incurred by the executor in seeking to maintain the validity of the will, because incurred “in consequence of the act of the-testator,” and because “it was the duty of the executor to maintain the validity of the will.”
In Succession of Filhiol, 123 La. 497, 49 South. 138, the syllabus reads in part as follows:
“It is ordinarily the duty of a person named as testamentary executor to offer the will impróbate, to defend it from attack, and to endeavor to have it executed, and, as that duty results from the act of the testator, the expense, such as fees of counsel'and costs of court, incurred in its discharge, should be borne by the testator’s succession.”
If the law expenses incurred in connection with the probate of null walls were made to fall upon the persons seeking to have the wills probated ajid executed, people would become chary of presenting wills for probate and execution.
In Girard v. Rabineau, 18 La. Ann. 603, where a direct action was brought against the legatee, -who was also testamentary executor, to annul the will, the court differentiated the case from one where the suit to annul is against the executor, and held the succession not liable for the services rendered by the attorney of the executor after the filing of the suit in nullity, but held the succession liable for those rendered previously. How far that decision, in not casting the entire expense upon the succession, can be reconciled with many others where successions w-ere held liable for the expenses incurred by executors in seeking to maintain the validity of null walls is a question needless to be considered. Suffice it to say that in the case at bar the expenses in question w^ere incurred before any opposition had been filed. Mr. Pavy would not have been justl *305 fled in stopping the probate proceedings ■simply because of this information, casually ■imparted to bim in conversation.
The judgment of the lower court was in favor of plaintiff.
Affirmed.