**Succession of ANDERSON.**
No. 14686.

Court of Appeal of Louisiana. Orleans.
Nov. 14, 1934.

See, also (La. App.) 154 So. 74.

Bernard Titche, Bernard Titche, Jr., and Robert D. Samsot, all of New Orleans, for Mrs. Gertrude Anderson Dix, executrix.

O'Niell & O'Niell, of New Orleans, for intervener and appellee.

Percy S. Benedict, of New Orleans, in pro. per. amicus curiæ.

JANVIER, Judge.

This case presents only one question and that, one of law: Can a forced heir, a daughter who, in the will of her father, is not recognized as an heir, and who, by successful litigation against the executrix of her father's estate, secures recognition as a forced heir, be compelled to pay a pro rata part, or, in fact, any portion of the fee of the attorneys employed by the executrix to resist the claim of the heir?

In the district court there was judgment in favor of the heir, Mrs. Irene Anderson Delsa, holding that she is not liable for any part of the fee referred to above. The executrix, who is also universal legatee and who, if the judgment is correct, must pay the entire fee as a result of its being deducted from the residue of the estate, has appealed.

Thomas C. Anderson died at his domicile in New Orleans in December, 1931. He left a will in which he made certain particular legacies with which we are not concerned and in which will, without in any way mentioning Mrs. Irene Anderson Delsa, or that he had been previously married to Mrs. Delsa's mother, he appointed his widow, Mrs. Gertrude O. Dix, his executrix and named her as universal legatee.

By opposition to an account filed by the executrix, Mrs. Delsa sought recognition as a daughter and forced heir of Anderson and also contended that Mrs. Dix, universal legatee, had lived in open concubinage with Anderson and hence could inherit from him only to the extent permitted by article 1481 of the Civil Code.

This second contention that Mrs. Dix' right should be limited to that part of the estate which a decedent may leave to his concubine was later withdrawn, and we are concerned with it only in a minor degree and to that extent shall discuss it later.

In the district court Mrs. Delsa was recognized as the legitimate daughter of Anderson and, as such, was ordered sent into possession of the légitime—one-third of the entire estate. The executrix appealed to the Supreme Court and there the judgment was affirmed, so that that question of fact—the legitimacy of Mrs. Irene Anderson Delsa—has been finally judicially determined and she has been recognized by the court of last resort as the legitimate daughter of the decedent. Succession of Anderson, 176 La. 66, 145 So. 270, 271.

All other controverted matters in the succession proceedings were adjusted. The attorneys for the estate were paid their fee for representing the executrix in the succession proceedings and nothing remained but to pay the attorneys for services rendered in resisting the opposition of the forced heir. Thereafter, the amount of the fee, $3,500, for that particular service, was agreed upon by the attorneys, Mrs. Dix, the executrix, and Mrs. Delsa, the forced heir, and it was stipulated that Mrs. Dix should pay two-thirds of the fee and that the liability vel non of Mrs. Delsa for the other one-third should await judicial determination.

The contention of the executrix is that her duty required that she attempt to uphold the provisions of the will and since, in doing so, it became necessary for her to employ counsel, the fee of the counsel should be paid by the estate, with the result that one-third thereof would be deducted from that portion of the estate inherited by Mrs. Delsa, the forced heir.

It is argued that, where the contention of the contesting heir is based on a dispute as to fact and where the executrix in good faith believes in the truth of the facts as set forth in the testament, the executrix cannot do otherwise than resist the contention of the heir, and, since such resistance necessarily requires the employment of counsel, the fees of counsel may be charged against the entire estate with the result that from the légitime of the forced heir there must be deducted a pro rata portion of the said fee.

The heir, Mrs. Delsa, on the other hand, maintains that regardless of whether the at-

·tack is based on· a question of fact or on a question of law and no matter how good may be the faith of the executrix in resisting the claim of the heir, nevertheless, when the claim of the heir is ultimately recognized, no portion of the fee of the attorney employed to resist the claim may be charged against the légitime.

In contending that the entire estate should be charged with the fee, the executrix points to article 1682 of the Civil Code, which reads as follows:

"The expenses incurred by the executor for affixing the seals, for the inventory, for the accounts and the other charges relative to his functions, shall be defrayed out of the succession."

Just what expenses are contemplated by the words "other charges relative to his functions" is the question· which confronts us. Do these words contemplate charges which are incurred for services which inure to the benefit of only a part of the estate, or do they contemplate only those expenses which are incurred for the benefit of the entire estate including the légitime?

·The article in our Code is a literal translation of article 1034 of the Code Civil Francais, reading as follows:

"Les frais faits par l'exécuteur testamentaires pour l'apposition des scélles, l'inventaire, le compte et les autres frais relatifs à ses fonctions, seront à la charge de la succession."

There are found among the writings of the French commentators many discussions of this article, and those authorities, though not with unanimity, seem to hold the view that ·where there are forced heirs such heirs should not be compelled to pay any portion of the· expenses of administering the estate.

Counsel for Mrs. Delsa have industriously, and, we believe correctly, translated many writings of the said commentators, and we note among these translations the following:

Marcade, vol. 4, p. 129, ‘states the rule as follows:

"It is very plain that the testamentary executor does not definitively bear the expenses which he has been obliged to make, and that all of these expenses should be accounted for. to him. But it is not always at the expense of the *succession,* as our article says, that these expenses must fall; if there are forced heirs, it is at the expense *of the disposable portion* of that succession. In effect, the testamentary executor is appointed, and all expenses to which his functions give rise

are created, only in the interest of the legatees; these expenses, which are nothing more than an accessory to the legacies, and a means of procuring their payment, must, as in the case of the legacies, be taken from the disposable portion, in ·order that the forced heir should always have his legitime untouched."

In Planiol et Ripert, vol. 5, p. 749, 1932 Edition, is found:

"Although the expenses must be paid, ordinarily, by the succession, it is different when there are forced heirs. The disposable portion alone must attend to the payment of the expenses; the legitime must remain untouched, because this does not concern a succession debt."

Many other French writers follow this view, which, we repeat, holds that where there are forced heirs the expenses must be paid out of the disposable portion and no part may be charged against the légitime. See Mourlon, vol. 2, p. 469; Huc, vol. 6, p. 465; Baudry-Lacantinierie (3d Ed.) vol. 11, p. 343, § 2669; and Berriat-Saint-Prix, vol. 2, p. 285.

There are. others who do not go so far but who ·do believe, however, that a proper share of such expenses may be charged against the légitime of the forced heirs only where the services "have been beneficial to the whole succession, to the legitime as well as to the disposable portion. * * *" This view is held by Demolombe, who in his Traite des Donations (4th Ed.) vol. 15, p. 90, says:

·"They are, however, generally the expenses which have been beneficial to everyone at interest; and that is why our text places them *at the expense of the succession.*

"These last words do not always have an exact meaning for every case.

"They will apply, it is true, without difficulty, when the testator shall not have left forced heirs.

· "But, when the testator shall have left forced heirs, a' distinction must ·be made:

"The expenses which have been beneficial to the whole succession, to the legitime as well as to the ·disposable portion, shall remain, according to article 1034, a charge against the ·· whole succession; such as the costs of affixing the seals, the inventory, the funeral expenses of the deceased.

"But those costs must be left to the expense of the disposable portion only, which, shall have had for their object obtaining the execution of dispositions· attributable to that portion; for, the legitime cannot be diminished, in any manner, by dispositions of gratuitous title; and such expenses are only the acces-

sories of the dispositions in whose interest they are created, such as, for example, the expenses of a suit to sustain the validity of one of the dispositions of the will."

This view is adopted by Fuzier-Herman, in his Code Civil Annote, vol. 2, p. 808, in which he says:

"Besides, when our article places the expenses as a charge against the succession, it obviously refers only to those expenses which interest the whole succession, such as the costs of affixing the seal, the inventory, the expenses of last illness, etc.—With respect to the expenses relating solely to the execution of the testament, they must be borne by the disposable portion, and can, in no case, interfere with the legitime."

The following authorities also share this view: Boileux, vol. 4, p. 178; Coin-Delisle, vol. 38, p. 168; Duranton, vol. 4, p. 384.

A suggestion that the latter view should prevail in Louisiana is found in Succession of Dean, 33 La. Ann. 867, in which our Supreme Court held that certain law charges should be paid out of the entire estate because " * * * * they are debts necessary for the preservation and liquidation of the rights of the forced heir and of all concerned, and should, therefore, be borne by the common fund."

Perhaps the two cases which throw upon this subject more light than do any others are McNeely v. McNeely, 50 La. Ann. 835, 24 So. 338, and Succession of Beauregard, 49 La. Ann. 1176, 22 So. 348. Since these cases, at a first reading, give the impression that the conclusions reached conflict with each other, we have given them most careful consideration and believe that they are not in conflict, but, on the contrary, both support the view which we have adopted and are prepared to announce.

In McNeely v. McNeely, the facts were as follows:

Ludlow McNeely died leaving a will in which John H. McNeeley was appointed executor and which disposed of the entire estate to others than Ross B. McNeely, who claimed to be the legitimate son of the decedent. Ross McNeely had been born more than three hundred days after a judgment of separation from bed and board had been rendered in litigation between his father and mother, but the paternity of the child was never denied by the deceased, Ludlow McNeely. He had never brought an action "en desaveu." When the executor refused to recognize Ross McNeely as the legitimate child of the deceased, litigation was instituted on behalf of the child attacking the will because of alleged improper form and seeking his recognition as a legitimate son and forced heir. The executor knew that the child had been born more than three hundred days after the judgment of separation and he believed that he, as executor, could contest the paternity of the child because of the provisions of articles 188–191 of the Civil Code.

The court held, however, that since the father had not brought an action to disavow the child within the time prescribed, it could not be brought at all, and that, since it had not been brought and could not be brought, there remained the unrebutted presumption of legitimacy under which the child must be recognized as a legitimate child and, hence, as a forced heir. McNeely v. McNeely, 47 La. Ann. 1321, 17 So. 928. Later the executor, who was also residuary legatee, sought to charge against the entire estate the fee of the attorney who had represented him in resisting the attack of the child. As this would have resulted in reducing the légitime by one-third of the said fee, the child opposed this charge and it was held that no portion of the fee could be charged against the légitime. See McNeely v. McNeely, 50 La. Ann. 835, 24 So. 338, 344.

There are expressions in that decision which lead counsel for the executrix here to believe that the conclusion reached was based on the fact that the executor there (McNeely) had made a mistake of law and that the result would have been different had the contest been based on a question of fact and had the executor, in deciding for himself that question of fact, acted in good faith. For instance, the following:

"The executor was aware of the fact that no such action had been brought by the father. He had knowledge of the fact of the existence of the child, and that it had been born during marriage, before the bonds of matrimony had been finally broken; and he must be held in law to have known that the special defense he set up was unauthorized and unwarranted. * * *

"We do not think, under the circumstances of this case, opponent can be made responsible, directly or indirectly, for any portion of the costs incurred in the attempt to make that defense good, nor for the fees of the attorneys employed for that purpose. The error of law into which the testamentary executor and universal legatee fell as to his right to set up this special defense, and his belief that any estoppel which might have struck

the father on this subject did not reach to him, did not have the effect of authorizing the executor to charge up those particular costs and attorney's fees to the succession."

Counsel for Mrs. Delsa, forced heir, are equally certain, however, that since, in the McNeely Case, the right was denied to charge any part of the fee against the légitime, that decision is authority for the position now taken by Mrs. Delsa.

Succession of Beauregard, supra, on the other hand, permitted a portion of such fee to be charged against that part of the estate left by will to a grandchild who found it necessary to resort to litigation against the estate to protect his rights. But there the grandchild was not a forced heir, his father being alive, and he (the grandchild) having been bequeathed the disposable portion. He was thus rather in the position of a residuary legatee claiming the whole disposable portion than in that of a forced heir resisting a reduction of the légitime.

Then, too, in Succession of Beauregard we think that the fee which was permitted to be charged against the disposable portion left to the grandchild resulted from the fact that the court felt that the services rendered by the attorney who had charged the fee resulted in some benefit to the grandchild. It will be noticed that there was danger that the provision in the will, which provision the grandchild sought to set aside, might have been construed as a prohibited substitution rather than as a fidei commissum. Had it been so construed, the entire disposition would have been null and, as a result, the grandchild would have been deprived of the legacy; whereas, if the said provision could be construed as a fidei commissum, merely that portion of the will which constituted the fidei commissum would have been "reputed not written." Therefore, when the final construction placed upon the will held that the condition was a fidei commissum and not a substitution, the grandchild was benefited to that extent.

We are referred to several other cases which throw light upon the subject. Counsel for Mrs. Dix assert that Succession of Hasley, 27 La. Ann. 586, upholds their contention that it is only where the executor as a result of a mistake of law resists the claim by an heir that he cannot charge a portion of the attorney's fee against the heir. There is language which holds that a defense which is plainly unfounded as a matter of law cannot be charged against the heir. For instance:

"The fee for defending the suit to reduce the legacy to the disposable portion and for an account, is not a proper charge against the estate. The testator having left forced heirs, the executrix might have learned from any member of the bar that the bequest of the usufruct of the whole of his property was reducible, and there was no necessity for defending such a suit, at least, by the executrix. If the legatee chose to defend it, she should pay a reasonable fee. This item was, therefore, improperly allowed as a credit."

However, Mrs. Delsa's counsel point to this case as being only one more in which the court has refused to permit an encroachment upon the légitime.

In the Succession of Filhiol, 123 La. 497, 49 So. 138, 143, is found the following:

"It was unquestionably the duty of Inez Schmidt to offer the will for probate and to endeavor to have it executed. * * * And, as the duty referred to was imposed upon her by the act of the testator, it is equally clear, both upon reason and authority, that the expense incurred in its discharge should be borne by his estate."

But there was no légitime involved there. Nor was there in Succession of Morere, 114 La. 506, 38 So. 435, nor in Re Marshall's Estate, 149 La. 300, 88 So. 914.

It may be that counsel for Mrs. Dix have mistaken the meaning of various expressions used by the Supreme Court in those cases to which we have referred, and in which it seems to have been held that the right to charge a portion of the attorney's fee against the entire estate should depend upon whether or not the defense was justified or should have been made.

Counsel for the executrix, as we have stated, contends that upon the good faith of the executrix in defending the attack may depend the question of whether a part of the fee may be charged against the heir making the attack, but there is language in McNeely v. McNeely, supra, which indicates that upon the good or bad faith of the executrix may depend, not the question of whether any part of the fee can be charged against the heir who makes the attack, but whether an executor himself should not be required to pay the fee incurred as a result of his obvious failure to recognize apparent facts or because of his obvious error of law. In that case we call attention to the words "himself" and "individually" as they appear in the following excerpts:

"The error of law into which the testamentary executor and universal legatee fell as to his right to set up this special defense, and his belief that any estoppel which might have struck the father on this subject did not reach to him, did not have the effect of authorizing the executor to charge up those particular costs and attorney's fees to the succession. He must sustain them himself. * * * The costs incurred in the case of McNeely, tutrix, must be separated. Those incurred 'in attempting to defeat the heirship of opponent should be changed (charged) entirely to J. H. McNeely individually. * * *"

We have given much thought, independently of the reported decisions, to this most important question. We recognize the duty in an executor to do all that is reasonably possible and proper to carry out the trust that has been imposed in him, and we know that in almost no case can an attack on a will be successfully defended except by the employment of counsel. It would seem to follow that, where an attorney is employed for such a purpose, the fee charged by him should be borne by the estate as a whole. But it is even more clear that it is the policy of the law of Louisiana that a forced heir must not be in any way deprived of any portion of his légitime.

If a parent by telling the truth about the status of forced heirs may not deprive them of any part of their rights, then it would seem incongruous to hold that a parent by falsely denying paternity may place upon the forced heir the expense of disproving the denial and also any portion of the expenses which the executor may be forced to undertake as a result of the parent's denial. This would result in a reduction of the légitime and, thus, a parent would be permitted, by making a false statement, to bring about a result which could not be produced by telling the truth.

■ Viewing all of the authorities together and giving the question such independent thought as is at our command, we conclude that where there is a forced heir, who is compelled to resort to litigation to maintain his rights, no portion of the fee of ·the attorney employed to resist his claim may be charged against him either directly or by reduction of the mass of the estate before distribution.

It may well be that, where there are no forced heirs, such fee as is charged for an unsuccessful, though bona fide, defense of such an attack may be charged to the entire estate, though on that question we need express no opinion.

We note that counsel for the executrix have apparently fallen into the error of believing that it is only by the final decree of the Supreme Court that Mrs. Delsa has been made a forced heir of Thomas C. Anderson, and that since she was not a forced heir until that decree was rendered, Mrs. Dix, the executrix, necessarily was forced to resist the claim of Mrs. Delsa, who, at the time of her opposition, was not a forced heir. But it was not the Supreme Court which created Mrs. Delsa's status as a forced heir. The decree of that court merely recognized a status which had existed since Mrs. Delsa's conception. She was always a forced heir of her father, and when the Supreme Court, by final. decree, recognized that fact it merely recognized a status which had always existed.

The conclusion to which we have come is a most just one in this case because, however good may have been the faith of Mrs. Dix in believing that her resistance of the attack of Mrs. Delsa was for the benefit of the whole estate and we see no reason to question her motive in this regard, the fact remains that only she herself and Mrs. Delsa were involved. If she could have successfully resisted the claim of Mrs. Delsa, only she (Mrs. Dix) would have been benefited thereby.

The situation much resembles that which was found in Girard v. Babineau, 18 La. Ann. 603, although there there was a direct action, because, as soon as it'developed that only Mrs. Dix, the executrix, on the one hand, and Mrs. Delsa, the claimant, on the other hand, were involved, the estate itself had no interest in the outcome. In Girard v. Babineau, the Supreme Court, in refusing to permit the fee of an attorney charged for defending the will to be charged against the whole estate, said:

"From the moment that all the legatees of Marguerite Babineau appeared in Court and filed their answers to the direct action. brought against them to annul the will, the *contestationalities* was between them and the heirs, and not between the latter and the testamentary executor."

In addition, to the claim of Mrs. Delsa for her légitime as a forced heir, her opposition contained a charge that Mrs. Dix, having been the concubine of the testator, was prohibited by law from inheriting except to the extent of one-tenth, payable out of the movables. This charge constituted an attack on the will which placed upon the executrix the obligation to defend that portion of the will, and, therefore, that charge unsuccessfully made might have created in Mrs. Delsa a liability for some part of such fee as may have been

charged for that portion of the defense of her own attack.

It appears, however, that no substantial part of the service of the attorneys was devoted to that part of the case because that attack was immediately withdrawn as soon as proof of the marriage of Mrs. Dix was offered. No evidence is produced to substantiate any charge for that part of the attorney's fee, and we conclude that no serious consideration was devoted to that part of the case.

In reaching this conclusion we note in various portions of the briefs and of the record expressions indicating that no one gave thought to the charge after the proof of the marriage of Mrs. Dix was offered in evidence.

In the opinion of the Supreme Court that charge is referred to as follows:

"The petition contained other demands unnecessary to mention, as they have been abandoned."

In another part of the opinion that portion of the attack is plainly ignored, the court stating:

"The appeal presents, as the sole issue in the case, Is Mrs. Delsa the legitimate child of Anderson? If she is, she is entitled to her legitime."

In the brief of the attorneys for the executrix in the main case we find the following:

"There is only one issue in this case: Did the deceased, Thomas C. Anderson, intermarry with Emma Schwartz?"

In its opinion the trial court, referring to this charge of concubinage, said:

"Mrs. Delsa, on allegations that she is the daughter of Thomas C. Anderson, the deceased, issue of his marriage with Emma Schwartz, and his only child and forced heir, demands the reduction of the dispositions of the will of the deceased, in which she was ignored and recovery of the legitime. Other allegations and demands were made in the pleadings, which are not mentioned in oral argument or briefs, and are considered to be abandoned."

■ We conclude that the only issue seriously presented by Mrs. Delsa in her attack in which she was successful was whether or not she was a forced heir of Thomas C. Anderson, and that the entire fee charged for defending her attack was charged for services rendered in an attempt by the executrix to disprove the legitimacy of Mrs. Delsa, and that no part of

that fee can be charged against the légitime of Mrs. Delsa.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.