## No. 8027.

SUCCESSION OF LIZZIE DEAN (MRS. ELIZA V. MAHOOD). ON OPPOSITION OF MRS. CHARLOTTE DUFFY.

33 867
50 838

33 867
f123 482

In estimating the active mass of a succession, the valuation in the inventory is not conclusive, and the true value of the property may be shown by other proofs.

In fixing the amount of the legitime of the forced heir, the funeral expenses and law charges must be considered as debts and be deducted from the active mass of the succession.

APPEAL from the Second District Court for the parish of Orleans. *Tissot,* J.

*Bentinck Egan* for the Opponent and Appellee.

*T. Gilmore & Sons* for the Executor and Legatees, Appellants :

First—In determining the reduction to which donations *inter vivos* or *mortis causa* are liable, the value of the property at the decease of the donor or testator is to be considered, but where the appraisement in the inventory, made after the death, is shown to be erroneous, the court should be guided in fixing the value by other and more reliable evidence. C. C. 1505; Miller vs. Andrus, 1 An. 238; Maples vs. Mitty, 12 An. 760.

Second—The debts to be deducted from the aggregate amount of property, should include funeral expenses and necessary law charges. Marcadé, vol. 3, 481, § 3; Duranton, vol. 3, p. 480; † 3 ; Boileux, vol. 3, p. 522.

Third—Where the forced heir receives her portion of the revenues from the period of the death to the date of the partition she is not entitled to interest.

The opinion of the Court was delivered by

FENNER, J.   Mrs. Mahood died leaving an estate valued, on the inventory taken after her death, at $13,123 71, of which $11,000, was in

immovables.  She left a will containing two particular legacies of $1000
and $2000.  She left one child, Mrs. Duffy, the present opponent, who,
though made residuary legatee by the will, is before us solely in the
capacity of forced heir for one-third of her mother's estate.

The succession was opened, the will was probated, and an executor
qualified, who, however, left the property, for several years, in the hands
of Mrs. Duffy, who disposed of some of the movables and collected
rents of the real estate.  Subsequently, the property was sold, and the
entire amount coming into the hands of the executor from the whole
estate aggregated the sum of $5578 21.   The executor filed an account
in which he distributed these funds as follows :

To funeral expenses, law charges, expenses of last illness, and
      building tomb, together .................................. $2257 22
Particular legacies ......................................... 3000 00
leaving a sum of $320 for the forced heir and residuary legatee, in ad-
dition to a sum of $820 for movables appropriated by her, and a
further sum of $2862 94, nett rents which had been collected by her.

The forced heir opposes the particular legacies on the ground that
they exceed the disposable *quantum*.

Two questions of law are presented, as to the rules which must be
followed, in estimating the reserve or forced portion of the heir.

1st.  In estimating the active mass of the estate, must the valuation
in the inventory taken immediately after the death, be accepted as
conclusive ?

There is no dispute that the value at the moment of the testator's
death must govern; but the executor, representing the interest of the
particular legatees, contends that the appraisement on the inventory is
not conclusive, but is subject to contradiction and diminution by proper
proof.

This Court has long since determined the effect to be given to inven-
tories.  Thus it said, referring to a case where the inventory was made
in the presence and with the consent of the parties interested: "The
principal object of the law in requiring a public inventory to be made of
all the effects belonging to a succession, is to establish the existence
of all the property, and to show the whole amount or value thereof
     *     *     such an inventory is to serve as the basis of the settle-
ment of the estate, so far as it shows the effects belonging thereto and
so far as it establishes its situation; but we are not ready to say that
it should be received as conclusive proof of the real value of the prop-
erty, so as to be used as the exclusive criterion by which the interested
parties are to be charged, in the partition of the property and settle-
ment of the estate.  Except where the law has positively said that the
property so inventoried shall be taken at the estimation price, we under-

stand that the estimation made by the appraisers, not being conclusive, must often yield to the proof of its being excessive or incorrect." Babin vs. Nolan, 4 Rob. 286.

This decision has been followed in the following and other cases :

Dérouin vs. Segura, 5 An. 550.

Succession of Pipkin, 7 An. 619,

It must be received as settled doctrine, and the executor's right to reduce the estimation of the inventory, by proof, must be maintained.

2d. In estimating the debts to be deducted from the active mass, must the funeral expenses and the necessary law charges be included ?

On this question we have been referred to, and have been able to find, no pertinent authority in our reports.

Our article 1505 Rev. C. C. is, however, substantially identical with Art. 922 of the French Code, and we find the French jurisprudence and commentaries unanimous in the opinion that such charges are to be deducted.

Coin Delisle says: " Le mot *dettes* comprend, n  seulement les dettes du défunt, mais les dépenses nécessaires de l'hér  r pour appréhender la succession, frais funéraires, frais de scellés, à'inventaire, de partage, de liquidation et autres que l'héritier a dû faire pour la conservation des droits de tous." Coin Delisle, p. 168, No. 38.

Duranton says that, in addition to the debts of the defunct, " on déduit aussi les frais funéraires, ainsi que les frais des scellés, d'inventaire, et autres analogues, qui sont des charges de l'hérédité, quoiqu'ils ne constituent point, à proprement parler, des dettes du défunt, puisqu'ils ont eu lieu depuis sa mort." 4 Duranton, p. 384, § 345.

To the same effect, are Marcadé, Boileux, Toullier, Ricard, Delvincourt and other commentators. The principle seems to be, that, although not, strictly speaking, debts of the deceased, they are debts necessary for the preservation and liquidation of the rights of the forced heir and of all concerned, and should, therefore, be borne by the common fund. This is a sound and reasonable view, and the concurrence of so many eminent jurists is a sufficient inducement for us to adopt it.

The law charges, in this case, might have been criticised, as to amount, had they been opposed; but, not being opposed as to amount, and, as to their nature, being exclusively those necessary for the liquidation of the rights of the forced heir, or of others interested, they must be deducted. As to the charge for building tomb, we express no opinion as to the propriety of its deduction, because, whether deducted or not, it would not affect the decision.

Our solution of the foregoing questions constrains us to reverse the ruling of the court *a qua.*

As to the true value of the property at the moment of the testator's

death, we are freed from difficulty by the express admission of the forced heir herself, that the real estate was not, at that time, worth one-half the inventory appraisement. Accepting this estimate, it reduces the value of the immovables to.....................................$5500

Add value movables............................................ 2123

we have........................................ .................$7623

Deduct debts and charges of liquidation not opposed............ 2207

leaves.......................................................$5416
of which one-third is $1802, the reserve of the forced heir. She has received nett rents to the amount of 2862, for two-thirds of which she is accountable, viz: $1908 50, which alone exceeds her share, besides $870 50 of movables which she took possession of and is accountable for, and also the $320 allowed her on the account.

It is not necessary to be critical as to particular items; for it is apparent that, in every possible view, the particular legacies opposed find full payment without prejudice to the rights of the forced heir.

It is, therefore, ordered, that the judgment appealed from be annulled, avoided and reversed, and it is now adjudged and decreed that the opposition of Mrs. Charlotte Duffy be dismissed at her costs in both courts.

Rehearing refused.