On the Merits.
Carmelite Desina was born June 11, 1890, and she and F. R. Kurucar were married April 20, 1906. In May, 1906, Carmelite Desina received in checks and cash from the succession of her mother sundry amounts, exceeding $30,000 in the aggregate. She died .January 6, 1907, leaving, as her heirs at law, Marco Desina, her father, a brother, and two sisters. Three days later,. Marco Desina and Viola Desina petitioned the court for letters of administration and for an inventory. The notary requested Kurucar, the surviving husband, to point out the property of the decedent in his possession. Kurucar pointed out some wearing apparel and a few articles of furniture, stating at the time that he knew of no other property belonging to his deceased wife.
On the petition of Marco Desina, the court ordered Kurucar to show cause why he should not make a full disclosure of all the liroperty, rights, and credits belonging to the succession of his deceased wife in order that the same might be inventoried. On the trial of the rule Kurucar refused to answer questions propounded to him, and was committed for contempt. The execution of this order was suspended by certiorari proceedings in the Supremo Court, which, however, finally sustained the validity of the order.
Thereupon, Kurucar answered the rule, admitting that on May 22, 190G, he received $32,008.40 from his wife, and averring his inability to account for the same beyond $6,105 deposited in the Citizens’ Bank, a certificate for 50 shares of stock of the New Orleans Railway Company, which cost $3,500, and a house and lot which cost $8,500.
The heirs obtained restraining orders to prevent the transfer of the stock and the withdrawal of the money from the bank.
The rule was finally made absolute, but a new trial was granted on the ground that Kurucar had not been served with notice of the filing of the rule.
In December, 1907, Marco Desina, appearing and acting as forced heir of his deceased daughter, and as joint administrator of her estate, and as tutor of his minor child, Gladys Desina, a sister of the decedent, joined by Andrew Desina, a brother, and Viola Desina, a sister of Carmelite Desina Kurucar, deceased, instituted a suit against F. R. Kurucar, Edwin D. Cohn, the Citizens’ Bank, the New Orleans Railway & Light Company, and its stock transfer agent, the Whitney-Central National Bank, for the purpose of vindicating the title of the succession of Mrs. Carmelite Desina Kurucar in and to the real estate, shares of stock, and money deposit hereinbefore mentioned.
The petition sets forth that F. R. Kurucar claimed title to all of said property, and based his claim on a gift from his deceased wife of the sum of $33,199, part of which he invested in the assets above described.
The petition denied that any such gift was made, and averred that the same, if ever made, was absolutely null and void for the following reasons:
(1) For want of form, not being evidenced by a notarial act.
(2) For want of capacity in the donor, she being at the time a minor less than sixteen years old.
(3) Because the donation divested the donor of all of her property.
The petition further averred that, if the donation was held to be valid in law, it was an encroachment on the legitime of the father, as forced heir, and should be reduced *477 to two-thirds of the donor’s estate; and that the plaintiffs would be entitled to one-half of the assets above described as community-property acquired during the marriage.
The petition further averred that Edwin D. Cohn claimed title to the 50 shares of stock above mentioned by pretended purchase from F. R. Kurucar; that if any such sale was made, which is denied, the same was null and void, because said shares belonged to the succession of Carmelite Desina Kurucar, or to the community which formerly existed between her and her said husband.
Petitioners prayed for judgment decreeing said alleged donation to be null and void, and also the alleged sale of the 50 shares of stock to Edwin D. Cohn, and that the succession and petitioners be decreed the owners of the real estate, money in bank, and shares of stock already mentioned; and for judgment against F. R. Kurucar for $18,100, with legal interest from judicial demand, “the said sum representing the balance of funds received by him from his said wife for investment, as aforesaid,” and for judgment against him for the occupancy of the real estate from January 6, 1907, until vacated, on the basis of $100 per month.
In the alternative Marco Desina prayed that the donation be reduced to satisfy his legitime as forced heir, and all the petitioners I>rayed in the alternative that the assets and properties above described be decreed to belong to the community formerly existing between .the parties.
Petitioners further prayed for writs of injunction to preserve the status quo of the property pending the suit.
Kurucar answered, praying for judgment dismissing plaintiffs’ suit, confirming the alleged donation to him, and decreeing that all of the funds so given him, those spent as well as those on hand, and the real estate described in the petition, be his separate property.
Cohn for answer asserted his title to the shares of stock as a purchaser in good faith.
The two banks and the railway company answered that they were mere stakeholders without interest.
It appears that Cohn had instituted a suit against the railway company and its transfer agent, the Whitney-Central National Bank, to compel a transfer, of said shares of stock on the books of the corporation. The two suits were consolidated and tried together by consent of all parties, but separate decrees were rendered in each.
In the main suit the trial judge held that the donation was valid, but reduced the same by one-third, or $11,066 which sum was decreed to be paid by F. R. Kurucar to Marco Desina, as forced heir, and, in default of his so doing, it was ordered that the real estate be sold and the proceeds of the sale and the money in the Citizens’ Bank be applied to the satisfaction of said amount, with legal interest from January 6, 1907, together with costs and charges, said disbursements to be accounted for to the court by the administrators of the succession.
In the Cohn Case there was judgment rejecting, his demand and dismissing his suit with costs, and recognizing the succession as the owner of the 50 shares of stock in question.
All the parties have appealed or have joined in the appeal, and therefore all the issues raised in the court below are before us for review.
It is not disputed that the checks were indorsed by Mrs. Carmelite Desina Kurucar and delivered to her husband, who collected the money and deposited the same in bank to his own account. The heirs of the wife, however, contend that the evidence is insufficient to prove the intention of the wife to donate all her property to her husband, and that the delivery was made for the purpose of investment. The trial judge disposed of this issue as follows:
*479 “It is proved that the wife gave the check to her husband. The giving of a check for money is a manual gift, and subject to no other formalities than that of delivery.”
The judge a quo also held that the donation could not be attacked by the collateral heirs of the deceased on the other grounds urged by them; citing Bernard v. Noel, 45 La. Ann. 1136, 13 South. 737, and other cases.
As to the claim of Edwin D. Cohn to the 50 shares of stock, the judge found that Cohn was well aware at the time of his alleged purchase that the heirs claimed the stock, and was not therefore entitled to the protection of the law merchant and to the benefit of the provisions of Act No. 180, p. 370, of 1004. At the same time the judge recognized that Cohn, having sold the stock for Kurucar, and collected the price from the purchaser and paid the same over to Kurucar, and having subsequently reimbursed the purchaser, was both morally and legally entitled to the stock as against Kurucar.
The first question to be decided is whether there was a donation of the money and checks delivered to Kurucar by his wife in May, 1006. The heirs contend that, as the checks required the indorsement of the wife, there could be no donation of the same except by notarial act, citing article 1536 of the Civil Code, which reads as follows:
_ “An act shall be passed before a notary public and two witnesses of every donation inter vivos or mortis causa of immovable property or incorporeal rights, such as rents, credits, rights or actions, under pain of nullity.”
On the other hand, it is contended that the donation was perfect as a manual gift, accompanied by actual delivery, under article 1539, Civ. Code.
In Morres v. Compton, 12 Rob. 76, it was held that a donation of a promissory note made by the donor to his own order and by him indorsed must be made by an act before a notary, in the presence of two witnesses.
In Miller v. Andrus, 1 La. Ann. 237, it was held that a promissory note made by the father to the order of his daughter was null as a donation for want of form.
But checks have been differentiated from notes, and other rights and credits, in a number of cases. In Succession of De Pouilly, 22 La. Ann. 97, it was held that the giving of a check which was collected was a manual gift of the money, the check being the means or vehicle of delivery. In Burke, Ex’r, v. Bishop, 27 La. Ann. 465, 21 Am. Rep. 567, the court went a step further and held that the manual gift of an indorsed check was good as a donation, although the indorser, the donor, died before it was collected.
In Stauffer, Macready & Co. v. Morgan, 39 La. Ann. 632, 2 South. 98, a man on the eve of marriage gave to his, intended spouse a check for $20,000, and she presented the same, and the drawees placed the amount to her individual credit. It was held that the donation was complete, and the funds became the paraphernal property of the wife.
The decisions supra are in accord with the common-law rule, which has been epitomized as follows:
“The general rule is that an indorsement and delivery of a check or certificate by the owner or payee thereof will constitute a valid gift of the fund represented by such cheek or certificate. The rule, however, in regard to the donor’s personal check or note is otherwise, and the mere delivery thereof does not constitute a perfect gift, since it is revocable at any time prior to its presentation and payment, and is ipso facto revoked by the death of the donor.” 20 Cyc. 1205.
The objection that the donation was null because made by a minor would be conclusive if it were urged by the donor. Civ. Code, art. 1476. The married minor, if not emancipated, can give to the other spouse only with the consent of those relations whose consent is requisite for the validity of the marriage. Civ. Code, arts. 1747, 1748. However, it has been held that the nullity *481 of a donation by a minor is not absolute, but relative, intended for the minor’s protection, and, in the absence of fraud, cannot be urged by subsequent creditors. Johnson v. Alden, 15 La. Ann. 505.
The objection that the donation was null because it embraced all the property of the donor (Civ. Code, art. 1497) is one that cannot be raised by the collateral heirs. Bernard v. Noel, 45 La. Ann. 1135, 13 South. 737.
As to the father, if there had been no donation he would have inherited one-fourth of his daughter’s estate, and her brother and sisters would have inherited the remaining three-fourths. Civ. Code, arts. 903, 904. By article 1494 of the Civil Code it is provided that :
“Donations inter vivos or mortis causa cannot exceed two thirds of the property, if the disposer, having no children, leave a father or mother or both.”
The anomalous result follows that the father or mother, who concurs with brothers and sisters, receives one-fourth where the child dies intestate, and one-third where there is a will or donations. Succession of Marks, 35 La. Ann. 993. Hence, in the case at bar, the father has no interest in contesting the validity of donations, the existence of which vests in him a larger proportion of his daughter’s estate than he would otherwise have inherited.
The judge a quo found that the deceased gave and intended to give. F. R. Kuruear testified positively to both the intention and the fact. Joseph Kuruear, the father, corroborated the son. Both are corroborated by the fact that the son invested a portion of the funds in his own name, and wasted the remainder without protest from his wife. According to the testimony of both witnesses, the wife declared her intention to give absolutely and without reservation when she delivered the large check to her husband. She had eloped from her father’s house, and in her infatuation insisted on giving her whole fortune to her husband. His expressed intention to deposit one-half of the money to the credit of his wife, if he should go into business, was conditional, and the condition never happened. Mr. Cherault, a brother-in-law of Mrs. F. R. Kuruear, testified to her declaration that the money belonged to her husband and he could do with it as he pleased.
Statements made to third persons by the wife that her husband had invested the money for her are of little or no weight. The wife might have revoked the donation, but did not do so, and it became irrevocable from the moment of her death.
F. R. Kuruear admits that Marco Desina, the father, is entitled to one-third as his legitime under article 1494 of the Civil Code. 1-Iis counsel, however, argue that the legitime should be based on the value of the property belonging to the estate of the donor added to the value of the property not alienated by the donee. Civ. Code, art. 1505. Mrs. Kuruear owned no property at the time of her death, except furniture and jewelry valued at $320. To this must be fictitiously added all the property disposed of by donation inter vivos. Id. As the property donated was money or its equivalent, no question of comparative value can arise.
The légitime should be ascertained by adding the sums donated to the value of the property of the succession at the time of the death of the donor, and by deducting therefrom funeral expenses, law charges, and debts, if any, of the deceased. Succession of Dean, 33 La. Ann. 869. The father would be entitled to one-third of the residuum.
The donee is bound to return the things donated, or to make good the legitime out of his own property. Mourlon, Examen Du Code Napoleon, vol. 2, p. 328, No. 648. If the donee fail to do so, the forced heir may revendicate the property, wherever found. Id.
*483 Where there is one or more forced heirs, every donation inter vivos is subject to the reduction that may be necessary to make up the legitime in whole or in part. In such a case the donee cannot transfer greater rights than he has, and his assignee occupies no better position, according to the maxim, “resoluto jure dantis, resolvitur jus aceipientis.” The law, however, in the interest of commerce, favors the purchaser of things donated inter vivos by requiring the forced heir to first discuss the property of the donee. Id.
Things donated inter vivos become the property of the donee, subject only to the right of reduction at the instance of the forced heirs. Hence the judge a quo was clearly wrong in decreeing that the shares of stock held by Edwin D. Cohn belonged to the succession of Mrs. Carmelite Desina Kurucar. At most, such stock was subject to contribution after the property of the donor had been discussed.
It is equally clear that the money and checks donated to Kurucar individually became his separate property. It is only the joint donation that inures to the benefit of the community. Civ. Code, art. 2402.
A few days after the death of his wife, Kurucar employed Edwin D. Cohn, a broker, to sell the shares of stock in question. Cohn sold the stock to S. J. Pourpart, another broker, received the price, which he turned over to Kurucar, less the usual broker’s commissions. On account of the proceedings against Kurucar sued out by the heirs, the Whitney-Central National Bank refused to transfer the shares. Thereupon Edwin D. Cohn reimbursed Pourpart, as he was bound to do under the rules of the stock exchange. The stock certificate was delivered to Pour-part, with an irrevocable power of attorney, to sell and transfer the same. As far as Kurucar is concerned, he had received the price and had no further interest in the transaction. Cohn, by reimbursing Pourpart, acquired an equitable right to the stock. Act No. 180, p. 370, of 1904, reads in part as follows:
“That the delivery of a stock certificate of a corporation to a bona fide purchaser or pledgee for value, together with a written transfer of the same, or a written power of attorney to sell, assign or transfer the same, signed by the owner of the certificate, shall be a sufficient delivery to transfer the title against all parties.”
Pourpart acquired a good title to the stock against all parties.
Not being able to obtain a new certificate from the transfer agent on account of the litigation in the succession, Pourpart returned the certificate to Cohn, who thereupon reimbursed the price which had been paid to Kurucar. We think that the legal title is still in Pourpart for the use and benefit of Cohn, whose right to the stock is recognized by Pourpart, and cannot be disputed by Kurucar, who has received the price.
The shares did not belong to the community, and hence the collateral heirs have no interest in the subject-matter.
The certificate of stock having been made a negotiable instrument by Act No. 180, p. 370, of 1904, and having passed to Pourpart in the usual course of business, the father as forced heir cannot revendieate the shares in whole or in part. In France movables in the possession of third persons who have received them in good faith cannot be revendicated by the forced heir, because under the Code Napoléon possession of movables is equivalent to title. Mourlon, supra. A fortiori, negotiable instruments should be governed by the same rule. The forced heir and the collateral heirs have no concern in the question whether the shares of stock belong to Pourpart or to Cohn.
The real estate and money standing .in the name of Kurucar seem to be sufficient to satisfy the legitime of the father, after payment of funeral expenses and law charges.
It is therefore ordered that the judgment appealed from in the proceedings entitled *485 “Succession of Carmelite Desina” be affirmed in so far as it rejects the demands of the heirs for the nullity of the donation in money and checks made by the deceased to Ferdinand R. Kurucar, and in so far as it recognizes Marco Desina as the forced heir of the deceased, and in so far as it restrains the defendants from disposing of the money in the Citizens’ Bank and the real estate standing in the name of Ferdinand R. Kurucar. It is further ordered that said judgment be annulled, avoided, and reversed in all other particulars, and that this cause be remanded for the purpose of determining the amount of the legitime of Marco Desina in accordance with the views herein expressed, and for the purpose of satisfying the same outiof the money in said bank and said real estate; and it is further ordered that the costs below be paid by said Kurucar, and the costs of appeal by the heirs, appellees herein.
It is further ordered that in the proceeding entitled “Edwin D. Cohn vs. New Orleans Railway & Light Company et al.,” the judgment appealed from be reversed; and it is now decreed that the said Edwin D. Cohn be recognized as the owner of 50 shares of the capital stock of the New Orleans Railway & Light Company, preferred, represented by certificate No. A2,372, dated June 7,1906, and that the defendants transfer said 50 shares to the said Edwin D. Cohn on the surrender of said certificate; and it is further ordered that the succession of Mrs. Carmelite Desina pay the costs of this suit, and also the costs ■of appeal.